Joe Denton Harris, Jr. v. Commissioner. Emma Dunn Harris v. Commissioner.
Harris v. Commissioner
Docket Nos. 26477, 26478.
United States Tax Court
1951 Tax Ct. Memo LEXIS 225; 10 T.C.M. (CCH) 477; T.C.M. (RIA) 51148; May 22, 1951
*225 1. Petitioners' eldest son reached the age of 19 years in 1941, and had his minority disabilities removed in that year under the laws of the State of Texas. On the 31st day of December, 1941, petitioners executed a deed of gift to the son conveying to him a one-third interest in a business known as Peoples Lumber & Supply Company which was the community property of petitioners. On January 1, 1942, petitioner Joe D. Harris, Jr., and his eldest son, Robert Harris, entered into a written partnership agreement under which two-thirds of profits and losses were to be shared by Joe D. Harris, Jr., and one-third by Robert Harris. The latter contributed as his part of the capital the one-third interest which he received as a gift from petitioners and was also to render services to the partnership. After his graduation from college in May 1942, he entered immediately into the services of the partnership and rendered important services to it until in July 1942. He then worked for a shipbuilding plant preparatory to going into the United States Army in September 1942. Held, that a valid and legal partnership was formed January 1, 1942, between petitioner Joe D. Harris, Jr., and his son, Robert *226 Harris, and this partnership continued through the years 1944 and 1945, and was not interrupted because of Robert Harris' service in the United States Army. 2. In September 1945, while Robert Harris and Joe Denton Harris, III, were both in the armed forces an unsigned partnership agreement was prepared by petitioner Joe D. Harris, Jr., changing the partnership of Peoples Lumber & Supply Company from a partnership composed of Joe D. Harris, Jr., and Robert D. Harris, to a partnership composed of three members, Joe D. Harris, Jr., Robert D. Harris, and Joe Denton Harris, III, with interests of 50 per cent, 25 per cent, and 25 per cent, respectively, retroactive to January 1, 1945. Held, the facts are not sufficient to sustain a finding of fact that the latter claimed partnership was a valid and legal partnership and the Commissioner is sustained in his nonrecognition of it. 3. In March 1944, a partnership known as Tri-County Lumber Co. was begun at Liberty, Texas, with L. T. Brookshire and Peoples Lumber & Supply Company as partners. In September 1944, a purported partnership agreement was written up and signed making L. T. Brookshire, Joe Denton Harris, III, and Peoples Lumber & *227 Supply Company partners with interests of 25 per cent, 26 per cent, and 49 per cent, respectively. This purported partnership agreement was made retroactive to March 1944. Joe Denton Harris, III, was in the United States Navy at the time and had very little to do, if anything, with the preparation of the partnership agreement. He contributed no capital to the business which originated with him and rendered it no services whatever. The business was sold in the Fall of 1944. Held, that Joe Denton Harris, III, was not a member of the partnership of Tri-County Lumber Co. and should not be recognized as such. Aaron Goldfarb, Esq., 517 City Nat. Bank Bldg., Houston, Tex., for the petitioners. John P. Higgins, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion In Docket No. 26477 the Commissioner has determined deficiencies against Joe Denton Harris, Jr., for the taxable years ended December 31, 1944 and 1945, of $5,061.87 and $1,224.47, respectively. The deficiency for 1944 is based upon two adjustments made to the net community income as disclosed by the return as follows: (a) Depreciation disallowed
$ 2,500.00
(b) Income reported by Robert
D. Harris, held taxable to
you
17,887.26
*228 No error has been assigned as to adjustment (a). Adjustment (b) is explained in the deficiency notice as follows: (b) Income reported by a partnership and a business firm to your son, Robert D. Harris, and held to be taxable to you is added to income reported. From partnership, Tri-County
Lumber Company
$ 7,495.04
From Peoples Lumber & Sup-
ply Company (Dayton)
10,392.22
Total Addition
$17,887.26
The deficiency for 1945 is based upon two adjustments made by the Commissioner to the net income as disclosed by the return (community). These two adjustments are: (a) Depreciation disallowed
$2,500.00
(b) Income shown as your sons'
now held taxable to you
5,663.26
No error is assigned as to adjustment (a). Adjustment (b) is described in the deficiency notice as follows: (b) As in prior years, it is held that your sons were not partners with you in the two business operated by you and that the entire gain is taxable to you, as follows: Peoples Lumber & Supply
Company, Dayton, Texas
Income per return
(Form 1065)
$9,485.62
Amount reported by you
6,242.81
Additional income
$3,242.81
Peoples Lumber & Supply
Company, Mont Belvieu,
Texas
Income per return
(Form 1065)
$6,140.22
Amount reported by you
3,719.77
Additional income
2,420.45
Total additional income
$5,663.26
*229 In Docket No. 26478 the Commissioner has determined against Emma Dunn (Mrs. Joe Denton, Jr.) Harris for the taxable years ended December 31, 1944 and 1945, deficiencies of $5,151.87 and $1,266.50, respectively. These deficiencies were determined upon the community property basis and were based upon the same adjustments as were made in Docket No. 26477, Joe Denton Harris, Jr., and need not be described here separately. Both petitioners by appropriate assignments of error contest the determination of the Commissioner that there was no valid partnership existing between Joe Denton Harris, Jr., and his two sons, Robert D. Harris and Joe Denton Harris, III, during the taxable years. Findings of Fact Some of the facts have been stipulated and as stipulated are found as a part of our findings of fact and are hereby incorporated by reference. Petitioners Joe Denton Harris, Jr., and his wife Emma Dunn Harris reside at Dayton, Texas. Their income tax returns for the calendar years 1944 and 1945 were filed with the Collector of Internal Revenue for the First District of Texas at Austin, Texas. These returns were filed on the community property basis. Joe Denton Harris, Jr., will sometimes *230 hereinafter be referred to as the petitioner. Partnership Between Joe Denton Harris, Jr., and Robert D. Harris Joe Denton Harris, Jr., owned Peoples Lumber & Supply Company, Dayton, Texas, individually in 1941, and for several years prior thereto. Robert Harris, eldest son of Joe Denton Harris, Jr., worked at Peoples Lumber & Supply Company while in grade school and in high school at Dayton, such services having been performed after school hours, vacations and holidays. Robert worked at Peoples Lumber & Supply Company during vacation periods while attending Texas A. & M. during years beginning in the Fall of 1938 until the Spring of 1942. Robert worked at Peoples Lumber & Supply Company after he was graduated from Texas A. & M. from May 1942 until the middle of July 1942. This work consisted in doing important work for Peoples Lumber & Supply Company. Robert Harris had his disabilities as a minor removed by court order on December 31, 1941, and thus became legally able to contract. Joe Denton Harris, Jr., and wife, Emma Dunn Harris, made a gift of one-third of the assets of Peoples Lumber & Supply Company, Dayton, Texas, to their son Robert on December 31, 1941. This deed *231 of gift stated, among other things, as follows: "* * * we, the undersigned, J. D. HARRIS, JR. and EMMA DUNN HARRIS, * * * for and in consideration of the love and affection which we bear for our son, ROBERT DUNN HARRIS, and for the purpose of enabling him to become a partner in the business heretofore operated by J. D. HARRIS, JR., and thereby, by observation and experience, become familiar with the manner in which trade, industry and commerce are conducted, and by observation learn what are the fruits and rewards of industry, attention and management, have given, granted, transferred, assigned, conveyed and set over, and by these presents do give, grant, transfer, assign and set over unto him, our said beloved son, ROBERT DUNN HARRIS, an undivided one-third (1/3) part, portion and interest in and to all of the assets and properties used in, or in connection with, such business, for the description and sort of which reference is made to the books of account which are being kept of such business, including, but without express limitation thereto, the manufacturing plant or plants, warehouses, logs, timber, cut and uncut, standing timber owned, contracts for the acquisition thereof, *232 manufactured lumber, lumber in process of manufacture, orders on hand for future delivery, accounts and bills receivable, and any and all other asset or property which may reasonably be deemed an asset or property of the business, but not intending hereby to transfer any interest in various or sundry other properties, real or personal, owned by J. D. HARRIS, JR., but not owned or used in connection with the business." Joe Denton Harris, Jr., entered into a written agreement to carry on the business of Peoples Lumber & Supply Company, Dayton, with his son, Robert Harris, as one-third partner on January 1, 1942, and himself as two-thirds partner. This written partnership agreement is in evidence and contains, among other things, certain provisions which we will now describe. The first provision of the agreement was as to the furnishing of capital by the respective partners and concludes by saying: "* * * Of such capital so reflected upon such balance sheet, to-wit: the inventory and itemization hereto attached, R. D. HARRIS is the owner of, and has contributed as his contribution to the firm capital, an undivided one-third (1/3), and the other two-thirds. (2/3) of such firm capital *233 so shown and exhibited upon such itemization and listing, to-wit: upon such balance sheet, is owned by, and has been contributed as his contribution to the firm capital by, J. D. HARRIS, JR., such property having heretofore been, and such contribution being, community property of him and his wife." The second provision of the partnership agreement has reference to the sharing of profits and losses and contains, among other things, the following provisions: "All losses, if any, shall be borne by the co-partners in the same proportion as their interest, as above stated, in the firm's capital. All profits shall be shared between the two partners as follows, towit: Out of the first profits, there shall first be taken by J. D. HARRIS, JR., as a reasonable compensation for his attending to practically the entire management of the business, the monthly sum of Two Hundred Fifty ($250.00) Dollars per month. All profits over and above such monthly sum of Two Hundred Fifty ($250.00) Dollars per month shall be shared between the partners in the proportion of one-third (1/3) to ROBERT D. HARRIS, and two-thirds (2/3) to J. D. HARRIS, JR., * * * but there shall be no withdrawal of profits, save *234 and except the withdrawal of the Two Hundred Fifty ($250.00) Dollars per month hereinabove first provided for, except at such times as in the judgment of J. D. HARRIS, JR., such withdrawal will entail no danger or harm to the business. Since the actual profits from month to month may vary greatly, and there may actually at times be months in which no actual profit would be shown upon that month's operations standing alone, it is agreed that J. D. HARRIS, JR. may each month withdraw the above stated sum of Two Hundred Fifty ($250.00) Dollars, appropriately charging the same to himself upon the books of the firm, without the necessity of ascertaining whether or not actual profits have then or theretofore been earned in an amount sufficient to have technically entitled him to make such withdrawal, and, for convenience in the examination of the books, such monthly withdrawal by him shall be set up as a separate account, separate from the accounts showing the withdrawal by the two partners in the proportions above provided of part or all of the remaining profits of the business." The next part of the partnership agreement provides for the management of the business and contains, among *235 other provisions, the following: "J. D. HARRIS, JR. shall have full charge and management of the business, and ROBERT D. HARRIS will participate in the management thereof only to such extent as may from time to time be felt by both of the partners to be proper and for the best interest of the business. * * *" There are other provisions of the partnership agreement providing for what shall take place in the event that the partnership is dissolved, either by mutual consent or by the death of a partner. It is not believed there is any necessity to set out these provisions in detail. In substance these provisions provide that in event of dissolution each partner or his estate shall receive his proportionate share of the assets after the payment of liabilities. The entire partnership agreement is incorporated herein by reference and made a part of these findings of fact. Robert Harris enlisted in the army in September 1942 and served continuously with the army in World War II until his discharge in 1946, during which time he was precluded from rendering services in behalf of Peoples Lumber & Supply Company, Dayton, Texas. Joe Denton Harris, Jr., and Robert Harris indicated in social *236 security tax returns filed with the United States Collector of Internal Revenue, withholding tax returns filed with the United States Collector of Internal Revenue, and Texas unemployment compensation commission returns filed with the State of Texas that they were operating Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, as partners. Joe Denton Harris, Jr., and Robert Harris held themselves out to the public and transacted business as partners in the Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, after January 1, 1942. After his discharge from the army in 1946, Robert Harris returned to supervise purchases, sales, and disbursement of funds for Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, and has continuously performed these services to the present date. He devotes all of his time to the business. The partnership agreement entered into by and between Joe Denton Harris, Jr., and Robert D. Harris January 1, 1942, was entered into with the intent that they should become partners in the ownership and operation of Peoples Lumber & Supply Company and they did in fact become bona fide partners in such business *237 firm and this partnership continued to exist throughout the two years here involved, namely, 1944 and 1945. Claim that Joe Denton Harris, III, was a Member in 1945 of the Partnership of Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas It is claimed that Joe Denton Harris, Jr., Robert D. Harris, and Joe Denton Harris, III, entered into a partnership agreement reflected by an unsigned written agreement to jointly conduct the business of Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, wherein Joe Denton Harris, Jr., owned 50 per cent, Robert D. Harris owned 25 per cent, and Joe Denton Harris, III, owned 25 per cent of the business. The purported unsigned written agreement was not introduced in evidence. Robert D. Harris and Joe Denton Harris, III, were both in the armed services of the United States at the time this purported partnership of September 1945 was formed. The evidence does not enable us to make a finding that a bona fide partnership agreement was entered into on or about September 25, 1945, wherein and whereby it was agreed that Joe Denton Harris, Jr., Robert D. Harris, and Joe Denton Harris, III, would own and operate *238 the business of Peoples Lumber & Supply Company of Dayton and Mont Belvieu as partners. Tri-County Lumber Company, Partnership A partnership business to carry on the retail sale of lumber was begun by Peoples Lumber & Supply Company and L. T. Brookshire on March 6, 1944, to be known as Tri-County Lumber Company. On the 25th day of September 1944, a purported partnership agreement was entered into which reads as follows: "THE STATE OF TEXAS
"COUNTY OF LIBERTY
"WHEREAS, a partnership doing business under the trade name of Tri-County Lumber Company has been formed consisting of the following members, to-wit: L. T. Brookshire, Joe D. Harris, III, and Peoples Lumber and Supply Company, which said partnership will deal in the handling of lumber, paints, nails, hardware, cement and such other materials and products as are customarily handled by a lumber yard in conducting its affairs and business, and "WHEREAS, the place of business of the said Tri-County Lumber Company shall be at Liberty, Texas, and shall be regarded as having commenced on the 6th day of March, A.D. 1944, and "WHEREAS, there has been no statement in writing setting forth the ownership of each of the above *239 named parties with respect to the proportionate share of each party's interest in and to said company, and "WHEREAS, it is the desire of all parties that an instrument of writing be entered into whereby the fractional interest owned by each will be set out as well as the contract and agreement of said parties insofar as they may deem necessary. "NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That L. T. Brookshire, Joe D. Harris, III, and the Peoples Lumber and Supply Company hereby acknowledge and declare that the ownership of said company is owned in the following manner, to-wit: L. T. Brookshire, 25%; Joe D. Harris, III, 26%; and Peoples Lumber and Supply Company, 49%. It is further understood and agreed that in the event one of the aforesaid partners desires to sell his interest in said company, then the remaining partners shall have the first right to purchase the interest of said partner so desiring to sell, and shall pay therefor according to the net worth of the partnership at the time of the sale. "It is further agreed and understood by and between all parties hereto that in the event one partner desires to withdraw from said partnership, then the party so desiring to *240 withdraw shall give the other partners notice of his intention of so doing by ten days written notice, and the other partners shall then have the right to purchase said partner's interest who desires to withdraw by paying him the net value of his said interest. If the other partners do not desire to purchase the interest of the partner desiring to withdraw, then he shall have the right to purchase the other partners' interest by paying therefor the net value of the respective interests of the other partners at the time of said sale. "Witness the hands of the parties hereto this the 25th day of September, A.D. 1944. [Signed] L. T. Brookshire [Signed] Joe Denton Harris, III Peoples Lumber and Supply Company "By J. D. Harris, Jr." Joe Denton Harris, III, was in the armed forces of the United States at the time the alleged partnership of Tri-County Lumber Company was formed and he knew but little about it. His father wrote him that he had been made a partner in the business. Joe Denton Harris, III, entered active service with the United States Navy in February 1944, and served continuously with the navy in World War II until his discharge on August 1, 1946, during which *241 time he was precluded from rendering any services in behalf of Tri-County Lumber Company, Liberty, Texas. The partnership of Tri-County Lumber Company was a partnership in which L. T. Brookshire owned a 25 per cent interest and the remaining interest was owned by Peoples Lumber & Supply Company of Dayton, Texas, of which Joe D. Harris, Jr., and Robert D. Harris were the partners, Joe D. Harris, Jr., owning two-thirds interest and Robert D. Harris owning one-third interest. Partnership Returns 1. A partnership return for the year 1944 on Form 1065 was filed by Peoples Lumber & Supply Company, Dayton, Texas. This return shows "Partners' Shares of Income and Credits" as follows: Joe Denton Harris, Jr., Dayton,
Tex. 100% time $3,000.00 plus
2/3 balance
$23,784.44
Robert Dunn Harris, Dayton, Tex.
now in U.S. Army. 1/3 after
$3,000 deduction
10,392.22
Total
$34,176.66
2. A partnership return for the year 1944 on Form 1065 was filed by Tri-County Lumber Company (Unincorporated), Liberty, Texas. This return shows "Partners' Shares of Income and Credits" as follows: L. T. Brookshire, Liberty, Texas,
for services
$ 2,500.00
25% remainder earnings
7,206.78
26% J. D. Harris, 3rd
7,495.04
49% Peoples Lbr. & Supply Co.
14,125.27
Total
$31,327.09
*242 3. A partnership return for the year 1945 on Form 1065 was filed by Peoples Lumber & Supply Company, Dayton, Texas. This return shows "Partners' Shares of Income and Credits" as follows: 100% Time. J. D. Harris, Jr.
Dayton, Tex. $3,000 plus 50%
Balance
$6,242.81
Nil Robert D. Harris, Dayton,
Texas 25%
1,621.41
Nil Joe D. Harris, 3rd, Dayton,
Texas 25%
1,621.40
Last two partners in U.S.A.
Military Service
4. A partnership return for the year 1945 on Form 1065 was filed by Peoples Lumber & Supply Company, Mont Belvieu, Texas. This return shows "Partners' Shares of Income and Credits" as follows: 100% J. D. Harris, Jr., Dayton,
Tex. 50%
$3,719.77
Nil Robert D. Harris, Dayton,
Tex. 25%
1,859.88
Nil Joe D. Harris, 3rd, Dayton,
Tex. 25%
1,859.88
Latter two partners in Mili-
tary Service
Opinion BLACK, Judge: There is no issue involved in these proceedings concerning the net income for the taxable years 1944 and 1945 of the alleged partnerships. The issues are which partnerships existed as valid and legal partnership and who were the partners. Petitioner in his brief states the issues which are involved in the following language: *243 "(1) Were Joe Denton Harris, Jr. and Robert Harris bona fide partners, dba Peoples Lumber and Supply Company, Dayton, Texas, and Mont Belvieu, Texas, for the years 1944 and 1945? "(2) Were Joe Denton Harris, Jr., Robert Harris and Joe Denton Harris III bona fide partners, dba Peoples Lumber and Supply Company, Dayton, Texas, and Mont Belvieu, Texas, for the year 1945? "(3) Were Peoples Lumber and Supply Company, Dayton, Texas, L. T. Brookshire and Joe Denton Harris III bona fide partners, dba Tri County Lumber Company, Liberty, Texas, for the year 1944?" We shall take up these issues in their order. (1) Were Joe Denton Harris, Jr., and Robert Harris bona fide partners dba Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, for the years 1944 and 1945? We think this question must be answered in the affirmative. The Supreme Court in , stated that in cases of the type which we have here, the basic question is: "* * * whether, considering all the facts - the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship *244 of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent - the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. * * *" [Italics supplied.] We think the facts support the conclusion that petitioner and his oldest son, Robert Harris, entered into a bona fide and valid partnership January 1, 1942, and that this partnership continued through the two taxable years here involved, 1944 and 1945. We have stated the facts rather fully concerning the organization of this partnership in our findings of fact and we need not repeat them in any great detail here. Briefly these facts are that for a good many years Robert Harris had worked during vacation periods in his father's lumber business. He had grown up in it, so to speak, and both father and son had looked forward to the formation of a partnership when Robert had finished his education and was ready to enter actively in the business. In 1941 he had reached the age of 19 years and had his minority disabilities removed. He expected *245 to graduate from A. and M. College of Texas in the Spring of 1942 and to immediately thereafter enter actively into the business. His father and mother executed a deed of gift, giving him a one-third interest in the Peoples Lumber & Supply Company business. Using that as his capital contribution to the partnership, Robert agreed with his father on January 1, 1942, that they would become partners in the Peoples Lumber & Supply Company of Dayton, with one-third profits and losses to be shared by Robert and two-thirds profits and losses to be shared by his father. Petitioner Joe Denton Harris, Jr., was to receive an annual salary of $3,000 for his management of the business. He did in fact receive such salary from the partnership during each of the taxable years and that $3,000 each year is not in controversy. When the partnership was formed January 1, 1942, Robert Harris did not at once enter into the services of the partnership. However, he intended to do so as soon as he graduated from A. and M. College in the Spring of 1942. When Robert did in fact graduate from Texas A. and M. in the Spring of 1942, he at once entered into the services of the partnership and rendered valuable *246 and important services to the partnership. This was from sometime in May 1942 to about the middle of July 1942. Robert took employment with Brown Shipbuilding Company after July 15, 1942, until his entry into the army in September 1942, in order to be engaged in defense work. We do not think that the interruption of Robert's services to the partnership by the war and his entering the armed forces would cancel out what seems to have been the organization of a legal and valid partnership between himself and his father. See , affirming the District Court decision. In the Crossley case it was held that a partnership existed between the taxpayer and his son who was prevented from continuing in his position as production manager of an electronic engineering plant by the fact that he was called into the armed forces. Taxpayer and his son intended to, and did, form the partnership prior to the completion of the son's engineering training. In that case the court in affirming the decision of the United States District Court, among other things, said: "In the case at bar the evidence amply supports the trial court's findings that plaintiff *247 and his son intended to and did form a bona fide partnership in 1942, that plaintiff regarded his son as a partner and treated him as such, and that after May, 1943, the son was prevented from carrying out his duties of contributing services and capital because he was called into service with the Navy." See also . We hold that petitioner Joe Denton Harris, Jr., and Robert Harris were bona fide partners in the Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, for the years 1944 and 1945. (2) We shall next take up issue (2). Were Joe Denton Harris, Jr., Robert Harris, and Joe Denton Harris, III, bona fide partners dba Peoples Lumber & Supply Company, Dayton, Texas, and Mont Belvieu, Texas, for the year 1945? There is no contention that Joe Denton Harris, III, was a partner in 1944. The contention is that he became a partner in September 1945. We are unable to find that petitioner has met his burden of proof as to the taking into the partnership of Joe Denton Harris, III, in September 1945. At that time Joe Denton Harris, III, was in the United States Navy. While it has been testified that some kind of a written partnership *248 agreement was written up but not signed by the parties, the evidence seems to clearly show that Joe Denton Harris, III, had but little, if anything, to do with having it written up. It seems to us that when petitioner's testimony and that of Joe Denton Harris, III, is boiled down to its real substance, it amounts to about this: Petitioner decided to take Joe Denton Harris, III, in as a partner and undertook to do it without saying much, if anything, to Robert and Joe Denton Harris, III, about it. In other words, it does not seem to us that the evidence sufficiently discloses that in September 1945 a bona fide partnership agreement was entered into forming a partnership between Joe Denton Harris, Jr., with 50 per cent interest, Robert D. Harris with 25 per cent interest, and Joe Denton Harris, III, with 25 per cent interest. This so-called partnership which petitioner alleges was formed in September 1945 seems to have been, more or less, a unilateral transaction in which petitioner Joe D. Harris, Jr., played the principal part and his sons, Robert and Joe Denton, III, played only passive rolls. They were in the armed forces and knew but little about it. We do not think bona fide partnerships *249 are formed in that manner. Another thing which, to our mind, throws further doubt about the validity of the partnership we are now discussing is that the partnership return which was filed for 1945 on Form 1065 undertook to make it effective January 1, 1945, and divided the profits on the basis of 50 per cent to Joe D. Harris, Jr., 25 per cent to Robert D. Harris, and 25 per cent to Jo Denton Harris, III, for the entire year 1945. Retroactive partnerships cannot be formed so far as the income tax is concerned, see . A partnership which existed between petitioner and his son Robert (see our holding on issue (1)) could not in September 1945 retroactively take in Joe Denton Harris, III, as a partner effective January 1, 1945. So, even if we should hold that Joe Denton Harris, III, became a partner in September 1945 (which we do not) nevertheless, there would be no warrant in the law to make this partnership retroactive to January 1, 1945, so far as the income tax is concerned. Under the evidence which we have in the record, the partnership earnings of Peoples Lumber & Supply Company, Dayton, Texas, and Peoples Lumber & Supply Company, Mont Belvieu, *250 Texas, for the year 1945 should be divided on a basis of two-thirds to Joe D. Harris, Jr., and one-third to Robert Harris, after allowing a salary of $3,000 to Joe D. Harris, Jr., for managing the partnership. Our holding that the facts are not sufficient to show that Joe Denton Harris, III, became a member of the partnership in September 1945, does not mean any indication on our part that he did not become a bona fide partner in 1946. We do not have that year before us. When Joe Denton Harris, III, was released from the United States Navy in 1946, he at once returned home and became production manager of Peoples Lumber & Supply Company and devoted all of his time thereto and has done so since then up to the date of the hearing in these proceedings at Galveston, Texas in October 1950. Therefore, we do not want to be understood as indicating that he was not a partner in 1946, and other years thereafter. We do not have those years before us and do not undertake to rule upon them. We simply hold that as to the year 1945, we do not think the facts are sufficient to establish that he became a bona fide partner in that year within the meaning of the Culbertson case [49-1 USTC [*] 9323] *251 to which we referred under issue (1). (3) We shall now take up issue (3). Were Peoples Lumber & Supply Company, Dayton, Texas, L. T. Brookshire, and Joe Denton Harris, III, bona fide partners dba Tri-County Lumber Company, Liberty, Texas, for the year 1944? In this partnership of Tri-County Lumber Company the Commissioner recognizes the partnership between petitioner Joe Denton Harris, Jr., and the other partner, L. T. Brookshire, but he declines to recognize Joe Denton Harris, III, as a member of the partnership. It may be here remarked that the business of Tri-County Lumber Company was only operated for about seven months in 1944 and was sold in that year and no question with reference to it is involved for the year 1945. Joe Denton Harris, III, was in the navy at the time it was organized. He graduated from Texas A. and M. College in 1943, had his minority disabilities removed in February 1944, and shortly thereafter went into the navy. An oral partnership agreement of Tri-County Lumber Company was entered into in March 1944, and the participants in that agreement were Joe D. Harris, Jr., acting for Peoples Lumber & Supply Company, and L. T. Brookshire. Joe Denton Harris, III, *252 was in the navy. The written partnership agreement purporting to make Joe Denton Harris, III, a partner with an interest of 26 per cent was not written up and signed until September 25, 1944, which was several months after the partnership business of Tr-County Lumber Company was begun. It seems to us that when petitioner's testimony and that of Joe Denton Harris, III, is boiled down to its substance with reference to the organization of this Tri-County Lumber Company partnership, petitioner decided to take Joe Denton Harris, III, in as a partner and to give him a 26 per cent interest in the business without saying much to Joe Denton Harris, III, about it. The gift to his son in such a manner may have been, and doubtless was, an entirely bona fide gift, but we do not think valid and legal partnerships can be formed in such a manner. Cf. , affirming . It is not contended that Joe Denton Harris, III, rendered any services whatever to the partnership of Tri-County Lumber Company nor that he contributed any capital to it, except that which was given to him by his father. Under all the facts and circumstances bearing *253 upon this Tri-County Lumber Company partnership, we hold that Joe Denton Harris, III, was not a partner. We hold under all the facts that the partnership of Tri-County Lumber Company of Liberty, Texas, was a partnership composed of Peoples Lumber & Supply Company with a 75 per cent interest and L. T. Brookshire with a 25 per cent interest. Decisions will be entered under Rule 50.